[No. G005278. Fourth Dist., Div. Three. Oct 22, 1987.]

RICHARD B. DIXON, as County Treasurer, etc., Petitioner, v. THE SUPERIOR COURT OF ORANGE COUNTY, Respondent; STANLEY D. DAUBENBIS, as Special Administrator, etc., et al., Real Parties in Interest.

COUNSEL

Cotkin, Collins & Franscell, Lucinda L. Lieder and Douglas J. Collodel for Petitioner.

No appearance for Respondent.

Ira Reiner, District Attorney, Harry B. Sondheim and Brent Riggs, Deputy District Attorneys, Mariellen Ross and Robert W. Scott, for Real Parties in Interest.

OPINION

SMALLWOOD, J.*— Petitioner Richard Dixon is the Los Angeles County Treasurer. He is holding a fund and is subject to conflicting orders from the Los Angeles and Orange County Superior Courts. He seeks a writ prohibiting the Orange County Superior Court from enforcing its order.

In January 1986 James Lee Casino pleaded guilty to conspiracy to commit grand theft and admitted a special allegation the sums involved exceeded $25,000. He also admitted several overt acts in furtherance of the conspiracy.[1] The plea included an agreement by the court to postpone sentencing for one year while Casino made restitution payments to petitioner for the benefit of several named victims. Whether Casino would ultimately go to prison or be placed on probation depended on how well he fulfilled the restitution agreement. Over the next several months Casino paid petitioner $110,000 out of a total of $412,500, but before he could be sentenced Casino was murdered.

---

* Assigned by the Chairperson of the Judicial Council.

[1] In 1984 Casino had pleaded guilty in the same case pursuant to a plea bargain calling for restitution as a condition of probation. When a question had arisen as to whether Casino was hiding assets in an effort to avoid restitution, the trial judge refused to honor the plea bargain and reset the matter for trial. The January 1986 plea marked a second negotiated settlement of the case.

After Casino's death, real party Daubenbis secured special letters of administration from the Orange County Superior Court. He filed a petition in Orange County under Probate Code section 851.5[2] and obtained a temporary order restraining petitioner from disbursing the fund. Nevertheless, on motion of the Los Angeles District Attorney, the Los Angeles County Superior Court ordered distribution of the fund to the victims. The Los Angeles court then dismissed the criminal proceedings.

After the Los Angeles court's distribution order, the administrator obtained a preliminary injunction from the Orange County Superior Court continuing the restraint against disbursement to the victims and ordering petitioner to convey the funds to the administrator.[3]

We stayed the Orange County Superior Court order and issued an alternative writ.

## I

The issue is, which court has jurisdiction over the $110,000?

There appears to be no dispute concerning the original jurisdiction of the Los Angeles Superior Court. Casino was arrested and brought before the court by an information charging conspiracy, grand theft, and violations of the Corporations Code. His guilty plea was taken only after a detailed and exacting explanation of the plea agreement. Petitioner argues that because the Los Angeles court first assumed jurisdiction, it therefore has jurisdiction over the parties and the subject matter. He states, "While the parties in both actions are not the same, the estate Administrator could seek relief in the Los Angeles Superior Court, which has had continuing jurisdiction over the fund since its creation, to temporarily enjoin distribution of the fund and make a determination as to ownership of the monies, thereby in effect making the estate and its beneficiaries 'parties' to the Los Angeles Superior Court action."

Petitioner directs us to a line of cases dealing with jurisdictional disputes between two courts. (See *Slinack* v. *Superior Court* (1932) 216 Cal. 99, 106 [13 P.2d 670]; *Halpin* v. *Superior Court* (1971) 14 Cal.App.3d 530, 545 [92

---

[2] All references hereafter are to the Probate Code unless otherwise specified.

[3] At the injunction hearing the administrator sought an order restraining petitioner from disbursing the funds and compelling him to convey the fund to the administrator. The trial court, by its comments at the hearing, granted both the restraint against disbursement and the order compelling delivery of the fund. The order compelling delivery was premature since the title question is unresolved. In any event we stayed the entire order pending this determination.

Cal.Rptr. 329]; *Morrisette v. Superior Court* (1965) 236 Cal.App.2d 597 [46 Cal.Rptr. 153]; *Cade v. Superior Court* (1961) 191 Cal.App.2d 554 [12 Cal.Rptr. 847]; *Myers v. Superior Court* (1946) 75 Cal.App.2d 925 [172 P.2d 84], and *Wright v. Superior Court* (1941) 43 Cal.App.2d 181 [110 P.2d 529].) These cases recite the general rule that where two courts have concurrent jurisdiction over a class of cases, the first one to assume jurisdiction over the subject matter exercises it exclusively. If we were to follow petitioner's logic, however, the Orange County probate court's injunction might well be entitled to priority over the Los Angeles court's disbursement order.

The above cases all deal with civil disputes pending in separate actions filed in different courts. This case involves funds paid during a criminal proceeding which has now been dismissed. The title to the fund is being questioned in a petition duly filed in a probate proceeding in another court. Only one "proceeding" currently exists, that being the probate action in Orange County. Therefore, the cited cases are inapposite.

Petitioner also argues the Los Angeles court had the power to make orders effectuating its prior order, despite Casino's death. Petitioner could not prevail on this point unless our court determined title. Because the issue of title has not been tried, however, it would be inappropriate for us to address it.

II

■ The administrator urges us to apply the rule of abatement *ab initio* to the Los Angeles court proceeding. Under that doctrine an appellant's death abates all further criminal proceedings. (Witkin, Cal. Criminal Procedure (1963) Appeal, § 720, p. 697.) He contends application of the rule would necessarily result in a finding the Los Angeles court order was made in excess of jurisdiction and hence was void. The rationale of abatement *ab initio* is discussed in *United States v. Moehlenkamp* (7th Cir. 1977) 557 F.2d 126: "[W]hen an appeal has been taken from a criminal conviction to the court of appeals and death has deprived the accused of his right to our decision, the interests of justice ordinarily require that he not stand convicted without resolution of the merits of his appeal, which is 'an integral part of [our] system for finally adjudicating [his] guilt or innocence.' [Citation.]" (*Id.,* at p. 128, quoting from *Griffin v. Illinois* (1956) 351 U.S. 12, 18 [100 L.Ed. 891, 899, 76 S.Ct. 585, 55 A.L.R.2d 1055].)

Unlike the decedent in *Moehlenkamp,* Casino died with no appeal pending. Casino was never convicted in the first place because he was never sentenced, and in criminal cases the sentence *is* the judgment. (*People v.*

*Thomas* (1959) 52 Cal.2d 521, 529, fn. 3 [342 P.2d 889].) Accordingly, in this case the reason for the rule does not exist.

Both petitioner and the administrator argued to this court as if we have the power to try the cause. Petitioner maintains the proper court is Los Angeles because a trust was created at the time of the original plea bargain. No, says the administrator, the funds were deposited in an escrow account and therefore belong to the estate. The confusion is understandable since each trial court treated the question of title as a foregone conclusion. The court in Los Angeles, in making its disbursement order, described the situation as follows: "The money paid into court was in no way considered as a condition of probation or restitution. . . . The defendant had no right as far as this court is concerned to that money after it was paid in. [¶] If the—If Mr. Casino had not paid off the full $412,000—$412,500 and he'd then go to prison. It would be absurd that this court would have ordered any part of this money returned to Mr. Casino. . . . [¶] The money was not an escrow account in any classic sense. It could have been held by the District Attorney in her [sic] own account, it could have been distributed at any time. It could have been immediately distributed to the victims. [¶] Clearly in this court's opinion the money was being held in a constructive trust for the victims by the District Attorney; clearly Mr. Casino had no right or title to that money once it was paid over to the Deputy District Attorney."

The Orange County court, at the hearing on the preliminary injunction, made equally strong remarks about the property belonging to the estate. The court: "I think [referring to the victims] you're going to have to file creditors' claims, and I think you're going to have to take your [place] in this line with the rest of the creditors." Later the court added: "[The fund] is being refunded to his estate so it's an asset of the estate. And as an asset of the estate it's available to satisfy creditors' claims. It's available to do a lot of things."

The petition filed by the special administrator under section 851.5[4] is a petition to determine title. That issue cannot be determined without a full

---

[4]Probate Code section 851.5 provides in relevant part as follows: "If a person dies . . . having a claim to real or personal property, title to or possession of which is held by another, the executor, administrator, or any claimant may file with the clerk of the court a verified petition setting forth the facts upon which the claim is predicated. Thereupon the clerk shall set the petition for hearing by the court. . . . The petitioner shall also cause notice of the hearing and a copy of the petition to be served . . . on any other person who may have an interest in the property which is the subject of the petition, at least 30 days prior to the date set for the hearing. Any interested person may request time for filing a response to the petition, for discovery proceedings, or for other preparation for the hearing and the court shall—grant a continuance for a reasonable time for any of these purposes. . . . If a civil action is pending in

evidentiary hearing, notwithstanding the actions of the respective trial courts in treating the question as a fait accompli. ■ The 1972 amendment to section 851.5 "was designed to abrogate the longstanding rule that the probate court lacked jurisdiction to determine adverse claims to the properties of an estate or to try the question of title to property as between a representative of the estate and strangers to the estate. [Citation.]" (*Estate of Sayles* (1982) 130 Cal.App.3d 275, 279 [181 Cal.Rptr. 543], and cases cited therein at p. 279. See also *Estate of Linnick* (1985) 171 Cal.App.3d 752, 760 [217 Cal.Rptr. 552] and *Richer* v. *Superior Court* (1976) 63 Cal.App.3d 748, 756 [134 Cal.Rptr. 52].) Thus, section 851.5 provides a procedural framework for resolution of disputes akin to this one. The statute allows for discovery and preparation time, obviously contemplating a civil trial of the disputed issue in the probate court.

*Heiser* v. *Superior Court* (1979) 88 Cal.App.3d 276 [151 Cal.Rptr. 745], although dealing principally with a procedural shortcoming of section 851.5, is instructive. The claimant in *Heiser* sought a jury trial of a title issue, but his petition in the probate court contained no factual allegations. There is no right to jury trial in probate proceedings unless authorized by statute. (*Id.*, at p. 279.) Section 1230, however, has been interpreted to require jury trials of certain contested factual issues in probate cases. (*Ibid.*) The trial court in *Heiser* was unable to determine from the petition if the case raised such an issue, or whether the matter should be decided by the court. In discussing the problem created by setting a hearing date concurrently with filing the petition, thus precluding a timely jury demand, the court stated, "Probate Code section 851.5 should be amended to provide for filing (by either party) of a request for trial setting after the issues are joined." (*Id.*, at p. 281.) The *Heiser* court suggested that when asking for a jury trial claimants advise the court of the exact nature of the disputed claims, so the court can determine the propriety of the jury request. (*Ibid.*) ■ *Heiser's* language makes it clear that a complete trial is required of any disputed factual questions regarding title. (*Id.*, at pp. 280-281.) We agree.

■ Because a trial is required, and in view of the conclusionary statements of the probate court that the fund belongs to the estate, it seems appropriate to comment on the issues involved.

■ Even absent a conviction, it appears the Los Angeles court had authority to approve an agreement for restitution as a condition precedent

respect to the subject matter of a claim filed pursuant to this section and jurisdiction has been obtained in the court where the civil action is pending prior to the filing of the claim, the court shall abate the petition until the conclusion of the civil action."

to a plea bargain.[5] A pledge to amass full restitution during a one year sentencing delay, in exchange for the court's promise of probation, was fashioned because of Casino's previous failure to make restitution as a condition of probation. Although Penal Code section 1192.7, subdivision (a) for the most part bans plea bargaining of serious felonies (as enumerated in subdivision (c)(1)), the prohibition does not extend to grand theft. Apart from the serious felony case limitation, we find nothing in the restitution statutes to prevent a trial judge from offering certain sentencing assurances in exchange for restitution being made in advance of the sentence itself. Such an agreement would be consistent with this state's strong public policy favoring restitution.[6] Indeed, restitution for crime victims is now a California state constitutional right. (Cal. Const., art. I, § 28, subd. (b).)[7]

One admittedly unusual case even approved restitution as a condition of probation although some of the money related to a count of which the defendant had been acquitted (*People* v. *Lent* (1975) 15 Cal.3d 481, 487-487 [124 Cal.Rptr. 905, 541 P.2d 545] [acquittal would ordinarily preclude restitution, but trial judge's "broad discretion in the sentencing process" permitted restitution order on both counts where defendant convicted of one and acquitted of another]). ■ And as noted in *People* v. *Baumann* (1985) 176 Cal.App.3d 67 [222 Cal.Rptr. 32], the constitutional guarantee of restitution for crime victims does not "purport to limit or abrogate the judicially created right . . . to restitution for losses caused by criminal activity for which the offender was not convicted. [Citations.]" (*Id.,* at p. 83.)

Clearly, had the court told Casino to pay the victims over the next year and have them appear at his sentencing to verify payment, no complaint could now be heard. And as to the administrator's argument Casino was

---

[5] Penal Code section 1192.7, subdivision (b) provides as follows: "As used in this section 'plea bargaining' means any bargaining, negotiation, or discussion between a criminal defendant, or his or her counsel, and a prosecuting attorney or judge, whereby the defendant agrees to plead guilty or nolo contendere, in exchange for any promises, commitments, concessions, assurances, or consideration by the prosecuting attorney or judge relating to any charge against the defendant or to the sentencing of the defendant."

[6] Restitution is required as a condition of probation. (Pen. Code, § 1203.04, subds. (a)(1) and (a)(2).

It is a felony after a guilty plea and prior to sentencing to sell, convey, or assign assets with the intent to impair one's financial ability to make restitution. (Pen. Code, § 155.5.)

Under Penal Code section 6220 et seq. restitution centers are established to "provide a means for those sentenced to prison to be able to pay their victims financial restitution as ordered by the sentencing court, *or as agreed upon by the defendant and his or her victims.*" (Pen. Code, § 6221, italics added.)

[7] "It is the unequivocal intention of the People of the State of California that all persons who suffer losses as a result of criminal activity shall have the right to restitution from the persons convicted of the crimes for losses they suffer." (Cal. Const., art. I, § 28, subd. (b).)

not advised he was giving up his right to the money when he paid it, a trier of fact might well decide Casino was aware at the outset the money was to go to his victims, regardless of the ultimate disposition of the case. Such an inference might be drawn from the history of Casino's prior plea, the extraordinary lengths taken by the sentencing judge to ascertain Casino's understanding of the proceeding, and the district attorney's having contacted the victims and secured from some of them consent to the arrangement. Furthermore, Casino's guilty plea and his admission of the overt acts may be sufficient to find he was a constructive trustee of sums taken from the victims. (Civ. Code, § 2224.)[8]

■ In summary, the issue of title remains unresolved. The only court in which a proceeding is now pending is the Orange County Superior Court, sitting in probate. It is therefore the proper court to determine the issue. Meanwhile, with title disputed, the money is not available for a family allowance or for distribution to creditors.

Petitioner voluntarily assumed the role of trustee when he accepted the trust on behalf of the real party victims. (See Prob. Code, § 15600, subd. (a)(2).)[9] Having done so he "has a duty to take reasonable steps under the circumstances to take and keep control of and to preserve the trust property." (Prob. Code, § 16006.)[10] That duty obligates him to defend the trust in this proceeding.

Because petitioner was unsure of his status, he has not filed objections or responsive pleadings in the section 851.5 proceeding. The section permits any interested person to request time to file a response to the petition, to initiate discovery proceedings, or to prepare otherwise for the hearing. Petitioner should be allowed sufficient time to file responsive pleadings, and the trial court should grant a reasonable continuance upon either party's request for discovery and preparation time.

---

[8] Civil Code section 2224 provides that where one acquires property by fraud and has no superior right to the property, he becomes "an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it."

[9] Probate Code section 15600 became operative July 1, 1987. (Added by Stats. 1986, ch. 820, § 40.) Subdivision (a) supersedes the introductory clause and subdivision (1) of former Civil Code section 2222 (repealed by Stats. 1986, ch. 820, § 7), and incorporates part of former Civil Code section 2251. (See Cal. Law Revision Com. com., Deerings Ann. Prob. Code, § 15600 (1987 pocket supp.) p. 275.) Probate Code section 15600, subdivision (a), while new, reflects case law of long standing. (See, e.g., *Heitman* v. *Cutting* (1918) 37 Cal.App. 236, 238 [174 P. 675].)

[10] Probate Code section 16006 became operative July 1, 1987. (Added by Stats. 1986, ch. 820, § 40.) It accords with existing case law. (See, e.g., *Purdy* v. *Bank of America N. T. & S. Assn.* (1935) 2 Cal.2d 298, 303 [40 P.2d 481]; *Estate of Duffill* (1922) 188 Cal. 536, 547 [206 P. 42].)

Let a writ of mandate issue directing the Orange County Superior Court to vacate the order compelling delivery of the fund to the administrator, and ordering it to conduct a trial on the issue of title. The court is further ordered to direct petitioner to continue holding the fund until the matter is finally determined at trial, and if necessary, on appeal. The alternative writ is discharged.

Each party will bear its respective fees and costs.

Wallin, Acting P. J., and Crosby, J., concurred.

Petitioner's application for review by the Supreme Court was denied January 6, 1988.