Filed 8/21/14  P. v. Morales CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C072287 |
| v. | (Super. Ct. No. CRF105297) |
| BENITO MORALES, SR., | |
| Defendant and Appellant. | |

Defendant Benito Morales, Sr., was convicted by jury of transportation of methamphetamine (Count 1) and possession of methamphetamine for sale (Count 2).[1]

---

[1]     Effective January 1, 2014, Health and Safety Code section 11379, defining the crime of transportation, was amended to provide that " 'transport' means to transport for sale."  (Health & Saf. Code, § 11379, subd. (c); Stats. 2013, ch. 504, § 2.)  While this amendment applies retroactively to defendant's transportation conviction (*In re Estrada* (1965) 63 Cal.2d 740, 744, 748 [where an amended statute mitigating punishment has no saving clause and takes effect before the judgment of conviction becomes final, "the rule is that the amendment will operate retroactively so that the lighter punishment is imposed"]; *People v. Vinson* (2011) 193 Cal.App.4th 1190, 1197-1199 [the rule

(Health & Saf. Code, §§ 11379, subd. (a), 11378.)[2]  Following a bifurcated bench trial, the trial court found defendant had a prior felony controlled substances conviction (§ 11370.2, subd. (c)) and he committed the current offenses while released on bail in another felony case (Pen. Code, § 12022.1, subd. (b)).  The trial court further found defendant was previously convicted of a serious felony within the meaning of the three strikes law (Pen. Code, §§ 667, subds. (b)-(i), 1170.12, subd. (b)) and he had served four prior prison terms (Pen. Code, § 667.5, subd. (b)).  Defendant was sentenced to serve an aggregate term of 15 years in state prison.

On appeal, defendant contends:  (1) the trial court abused its discretion and violated his constitutional rights by allowing the prosecutor to elicit testimony from one of the arresting officers that he had "received information . . . that [defendant] was involved in the sale of drugs such as methamphetamine"; and (2) the evidence is insufficient to support the trial court's finding defendant was previously convicted of a felony controlled substances offense, which also served as the basis for one of the prior prison term enhancements, because the imposition of sentence with respect to that prior conviction was nullified following the grant of defendant's federal habeas corpus

---

articulated in *Estrada* applies to amendments that add to the elements of a crime]), it does not require reversal of this conviction because the jury found defendant guilty of possession of methamphetamine for sale.  Thus, the newly-added "for sale" element, already an element of possession for sale, was pled and proved beyond a reasonable doubt.  (See *People v. Montero* (2007) 155 Cal.App.4th 1170, 1175 [intent to sell is an element of the crime of possession for sale]; *People v. Vinson*, *supra*, 193 Cal.App.4th at pp. 1200-1201 [while amended section 666, requiring three prior theft-related convictions and three periods of incarceration, applied retroactively to the defendant's conviction, reversal not required where two such convictions and periods of incarceration were pled and proved as section 667.5, subdivision (b), enhancements and a third was established by stipulation at trial].)

[2]     Undesignated statutory references are to the Health and Safety Code.

petition. We need not decide whether the trial court erred in admitting the challenged evidence because any such error was harmless. With respect to defendant's second claim, we conclude substantial evidence supports the trial court's finding defendant was previously convicted of a felony controlled substances offense within the meaning of section 11370.2, subdivision (c). However, because there is no valid imposition of sentence with respect to that prior conviction, we must modify the judgment to strike the prior prison term enhancement. As modified, we affirm the judgment.

FACTS

In October 2010, agents of the Yolo County Narcotics Enforcement Team (YONET), including District Attorney investigator Agent Jonathan Updegraff and Deputy Gary Hallenbeck with the Yolo County Sheriff's Department, executed a search warrant on a mobile home in West Sacramento. The agents were looking for heroin. Three occupants of the mobile home were detained outside while the agents conducted the search.

During the search, a cell phone inside the mobile home rang. The caller's name appeared on the phone's screen as "Benito." When Agent Updegraff said the name, Deputy Hallenbeck responded: "[T]hat's Benito Morales." Deputy Hallenbeck knew Agent Updegraff had contacted defendant within the previous five or six months during an investigation of methamphetamine sales and believed defendant was the "Benito" on the phone. When Agent Updegraff answered the phone, one of the detained occupants outside the trailer yelled: "[D]on't come over." The caller apparently did not hear the warning and said he would "be there in 25 minutes." Agent Updegraff responded: "[C]ome over."

A short time later, defendant drove into the mobile home park with another man, Marshall Torres, in the passenger seat. The car was stopped and both men were detained

3

while the car was searched.  Agents found a prescription pill bottle in the center console of the car; defendant's name was printed on the label.  Inside the bottle was a plastic bag containing 7.8 grams of methamphetamine.  While the car was being searched, defendant said to Torres:  "[I]f I take this . . . I'll get life.  If you take this, you'll get a program."

Agents obtained a warrant to search defendant's house.  A digital scale with a "crystal substance" on "the balance portion of the scale" was found on a table in the garage.  Also in the garage, "75 small new and unused Ziploc coin bags" were found.  Agents also found two surveillance cameras at the house.  One kept watch over the table in the garage and the other had a view of the driveway leading to the garage door.  Based on the quantity of methamphetamine found in the car, the fact a digital scale with "crystal-type residue" and small plastic coin bags were found at defendant's house, and the existence and positioning of the surveillance cameras, Deputy Hallenbeck believed the methamphetamine was possessed for sale.

## DISCUSSION

### I

### *Admission of Evidence*

Defendant contends the trial court abused its discretion and violated his constitutional rights by allowing the prosecutor to elicit testimony from Deputy Hallenbeck that he had "received information . . . that [defendant] was involved in the sale of drugs such as methamphetamine."  Any error was harmless.

### A.

### *Additional Background*

Defendant represented himself at trial.  During his cross-examination of Deputy Hallenbeck, defendant asked whether he was "a person of interest involved in narcotic trafficking" at the time the mobile home was searched.  Deputy Hallenbeck answered:

4

"Absolutely." A short time later, defendant asked: "Did you ever learn of the person that was the supplier to the narcotics that was supposed to be taken to the [mobile home]?" Deputy Hallenbeck answered: "To the best of our knowledge, it was you." Then, in response to a series of defendant's questions, Deputy Hallenbeck explained that when the cell phone rang in the mobile home and the name "Benito" appeared on the screen, he suspected the caller was defendant because he "had prior knowledge that [defendant was] involved in sales of heroin and methamphetamine."

Defendant asked: "By 'prior knowledge,' are you talking about surveillance cameras or recordings of any kind or reports of any kind or were you just going on hearsay? What do you have to substantiate what you just said?" Deputy Hallenbeck answered he had "no documentation." Defendant continued: "So you just formed this opinion on the phone monitor and the fact that you were serving a search warrant at the [mobile home], and that was enough for you to say this guy's bringing drugs over, or he's going to come over with some drugs. Invite him over? Is that how that worked?" Deputy Hallenbeck answered: "When the phone rang and the name appeared on the phone, with our prior knowledge --" Defendant interrupted: "'Our'?" Deputy Hallenbeck responded: "Agent Updegraff, who had just contacted you within five or six months prior to this during a --" Defendant again interrupted: "And you know this how?" Deputy Hallenbeck answered: "Because he told me." At this point, a hearsay objection from defendant was overruled and Deputy Hallenbeck continued: "Agent Updegraff had prior knowledge of a methamphetamine sales investigation where you were arrested for it. He had -- he was the last one of us that actually saw you and spoke to you, so immediately when he saw the name on the phone, he said, 'Benito.' I said, that's Benito Morales. Agent Updegraff agreed, answered the phone, and said, come over."

5

On redirect, the prosecutor asked: "And you mentioned, I believe, earlier this morning that Agent Updegraff had told you about a previous investigation -- a recent investigation to this case to [defendant] being involved in the sale of controlled substances such as methamphetamine?" Defendant objected, "[o]n the basis that it's prejudicial and has no bearing on this case." When the trial court observed defendant was "the one who elicited the testimony," defendant responded: "Not the way he's asking it. He's connecting it to a whole different scenario, your Honor. He's rephrasing it into something entirely different."

The trial court then allowed defendant and the prosecutor to argue the matter outside the presence of the jury. The prosecutor explained he intended to elicit from Deputy Hallenbeck that he had information from sources other than Agent Updegraff indicating defendant was involved in the sale of heroin and methamphetamine. Defendant argued: "I still think it's prejudicial. I don't see what the relevance is pertaining to this case, because he's already testified to that. They've already heard that. I mean, to dwell on it and to dig into it is what he wants to elaborate on for the jury's prejudicial effect, and I don't think it's -- it would be denying me a fair trial if you allow him to do that. [¶] Because he answered that question earlier to a question that wasn't even really relative to that response, but it got in, but I wasn't going to make an issue out of it and make an objection and make it bigger. But that doesn't mean he can bring it up now and elaborate on it and bring in the fact that Updegraff knew me 20 or 30 years ago."

The trial court then stated defendant's objection appeared to be based on Evidence Code section 352. Defendant responded: "Yes, your Honor, I believe it's highly prejudicial. I'm already labeled a drug trafficking dealer already behind -- already there's enough stuff for that. For him to dwell on it is like painting the picture or putting the rest

6

of the pieces of the puzzle that are still scattered, and it's still questionable whether I'm this drug dealer they're expecting to arrive. [¶] I think it's highly prejudicial, your Honor. I think the Court would more effectively grant me a fair trial by not allowing that to be dwelled on in front of the jury."

The trial court addressed the prosecutor: "I'm inclined to permit you to say, you testified on cross-examination that you heard from Agent Updegraff that [defendant] had been arrested for methamphetamine sales. He will say yes, in which case, you may say, did you hear that he was involved in sales from any sources other than Agent Updegraff." Defendant then clarified he was not charged in the prior case with the sale of methamphetamine, but rather possession for sale. The prosecutor offered to clarify that for the jury as well. The trial court agreed and stated: "[T]hat balances the relevance and the potential for prejudice under [Evidence Code section] 352."

The prosecutor then asked Deputy Hallenbeck: "I just want to clarify something you had said on cross. You had said that Agent Updegraff told you that [defendant] had been arrested for sales of methamphetamine, and I just want -- did he tell you if it was for sales or possession for sales?" Deputy Hallenbeck answered: "Possession for sales." The prosecutor then asked: "And Deputy Hallenbeck, had you -- during your time as a YONET agent, your eight years as a YONET agent, you -- had you received information from other sources besides Agent Updegraff that [defendant] was involved in the sale of drugs such as methamphetamine?" Deputy Hallenbeck answered: "Yes."

## B.

### *Analysis*

Defendant cannot challenge the admissibility of evidence he elicited himself. (See *People v. Riel* (2000) 22 Cal.4th 1153, 1185.) Here, it was defendant who elicited the initial testimony from Deputy Hallenbeck that Agent Updegraff told him defendant was

7

previously arrested in connection with an investigation into methamphetamine sales, and this was the reason he believed defendant was the "Benito" calling the cell phone in the mobile home. Defendant challenges the admission of Deputy Hallenbeck's additional testimony that he knew from "other sources besides Agent Updegraff that [defendant] was involved in the sale of drugs such as methamphetamine." He argues this evidence amounted to improper character evidence under Evidence Code section 1101, subdivision (a), and the trial court abused its discretion and violated his constitutional rights to a fair trial and to due process by failing to exclude this evidence under Evidence Code section 352 as "cumulative and unduly inflammatory and prejudicial."

We need not decide whether the trial court erred in admitting the challenged evidence because any such error was harmless. Indeed, as defendant argued when he objected to this evidence below, Deputy Hallenbeck "already testified," and the jury "already heard," defendant was arrested during an investigation involving the sale of methamphetamine. Deputy Hallenbeck also testified on cross-examination defendant was "a person of interest involved in narcotic trafficking" at the time the mobile home was searched. Thus, the challenged evidence was largely duplicative of testimony defendant elicited himself. The only additions to Deputy Hallenbeck's testimony elicited by the prosecutor were (1) the arrest was for possession for sale, rather than actual sales, and (2) Agent Updegraff's encounter with defendant was not the only source for Deputy Hallenbeck's belief defendant was involved in the sale of methamphetamine. The first of these additions cannot be said to have harmed defendant. The second adds little to the testimony, elicited by defendant, that Deputy Hallenbeck believed him to be involved in methamphetamine sales. In other words, if defendant was prejudiced at all, he was prejudiced by his own cross-examination of Deputy Hallenbeck.

8

More importantly, the case against defendant was very strong. While law enforcement officers were searching the mobile home for heroin, a man named "Benito" called a cell phone in the mobile home and said he would be there in 25 minutes. A short time later, defendant Benito Morales pulled into the trailer park with Torres in the passenger seat. The car was stopped and searched. A prescription pill bottle in the center console contained a plastic bag with 7.8 grams of methamphetamine. Defendant's name was printed on the label of the bottle. While the car was being searched, defendant said to Torres: "[I]f I take this . . . I'll get life. If you take this, you'll get a program." The subsequent search of defendant's house uncovered the digital scale with "crystal-type residue," Ziploc coin bags, and surveillance cameras.

In light of this compelling evidence, even had the trial court excluded Deputy Hallenbeck's testimony he "received information from other sources besides Agent Updegraff that [defendant] was involved in the sale of drugs such as methamphetamine," we have no doubt the jury would have concluded defendant transported and possessed the methamphetamine for sale. "Accordingly, a result more favorable to defendant was not reasonably probable absent admission of the [challenged] evidence. [Citations.] For the same reasons, any error was harmless beyond a reasonable doubt. [Citations.]" (*People v. Lindberg* (2008) 45 Cal.4th 1, 26.)

## II

### *Prior Felony Controlled Substances Conviction*

Defendant also claims the evidence is insufficient to support the trial court's finding he was previously convicted of a felony controlled substances offense. We disagree.

"The People must prove all elements of an alleged sentence enhancement beyond a reasonable doubt." (*People v. Miles* (2008) 43 Cal.4th 1074, 1083.) " 'As a practical

9

matter, . . . prior convictions are normally proven by the use of documentary evidence alone.' [Citation.] 'Once the prosecutor presents this prima facie evidence of conviction, the trial court is allowed to make reasonable inferences from the facts presented. If there is no evidence to the contrary, the trial court may consider the abstract and the facts of the particular case, and utilizing the official duty presumption, find a defendant was convicted of and served the term of imprisonment for the listed felony.' [Citation.]" (*People v. Prieto* (2003) 30 Cal.4th 226, 258.)

"On review, we examine the record in the light most favorable to the judgment to ascertain whether it is supported by substantial evidence. In other words, we determine whether a rational trier of fact could have found that the prosecution sustained its burden of proving the elements of the sentence enhancement beyond a reasonable doubt. [Citations.]" (*People v. Delgado* (2008) 43 Cal.4th 1059.)

## A.

### *Additional Background*

In 1988, defendant was convicted of violating section 11352 and was sentenced to serve a term of imprisonment. We affirmed the judgment in its entirety. The California Supreme Court denied defendant's petition for review. Thereafter, the remittitur issued and the judgment became final.[3] However, in 1992, the United States District Court for the Eastern District of California granted defendant's habeas corpus petition based on the fact defendant was not appointed an attorney to represent him during the sentencing hearing. The federal court ordered the state to "obtain counsel" for defendant and "schedule a sentencing hearing or, in the alternative, to release [defendant] from the

---

[3]    On our own motion, we take judicial notice of our files in defendant's appeal of his 1988 controlled substances conviction. (*People v. Morales* (Oct. 20, 1989, C004560) [nonpub.opn.].)  (§ 452, subd. (d)(1).)

10

custody of [the state]." The matter was returned to the superior court. Counsel was appointed to represent defendant at resentencing; the probation department was ordered to prepare a report and recommendation. The probation department "recommended that the court resentence the defendant, as originally ordered on May 26, 1988, give the defendant credit for 1,335 days actual and 677 days conduct for a total of 2,002 days in custody, deem the sentence served, and refer him to parole for further action." The minute order prepared at the subsequent hearing states the trial court "deemed the sentence imposed has been served and ordered the defendant to contact his parole officer immediately."

**B.**

*Analysis*

With respect to each of defendant's convictions in the present case, section 11370.2, subdivision (c), provides for a three-year enhancement "for each prior felony conviction of, or for each prior felony conviction of conspiracy to violate, [specified provisions of the Health and Safety Code, including section 11352], whether or not the prior conviction resulted in a term of imprisonment." This provision does not expressly define "conviction." Defendant argues it means the judgment, which occurs in a criminal case when the trial court orally pronounces the sentence, and the grant of his federal habeas petition rendered the prior sentencing hearing a nullity and thereby also nullified the judgment. Defendant further argues there is no evidence the trial court re-sentenced him following the grant of the habeas petition. Indeed, the minute order indicates the trial court "deemed the sentence *imposed*," i.e., the original sentence the federal district court nullified, "has been served." (Italics added.) Thus, argues defendant, he "was never convicted in the first place because he was never sentenced, and in criminal cases

11

the sentence *is* the judgment." (*Dixon v. Superior Court* (1987) 195 Cal.App.3d 758, 762.)

Defendant's argument has a certain logical appeal. The Attorney General does not dispute its validity, but instead argues there is substantial evidence to support the fact defendant was re-sentenced in 1992 following the grant of his habeas petition. We cannot agree with the Attorney General's reading of the record. However, we also disagree with defendant's premise that "conviction," as that term is used in section 11370.2, subdivision (c), means the judgment pronounced during the sentencing hearing. Indeed, *People v. Rhoads* (1990) 221 Cal.App.3d 56 (*Rhoads*), a case cited by neither defendant nor the Attorney General, is directly on point.

In *Rhoads*, *supra*, 221 Cal.App.3d 56, our colleagues at the Fourth District Court of Appeal held, "for purposes of . . . section 11370.2, subdivision (c), 'conviction' means the ascertainment of guilt, which occurred in [that] case when [the] defendant voluntarily entered his plea of guilty to the prior offense." (*Id*. at p. 59.) The court explained: "In reaching this conclusion, we recognize that the term 'conviction' has no fixed definition and has been interpreted by the courts of this state to have various meanings, depending upon the context in which the word is used. . . . 'As appears in the case law, the terms "convicted" or "conviction" do not have a uniform or unambiguous meaning in California. Sometimes they are used in a narrow sense signifying a verdict or guilty plea, some other times they are given a broader scope so as to include both the jury verdict (or guilty plea) *and* the judgment pronounced thereon. [Citations.]' [¶] Our conclusion comports with the purpose of . . . section 11370.2, subdivision (c) and other criminal statutes which impose more severe penalties for second and subsequent offenses. That purpose is to deter repetition of the criminal conduct. [Citation.] In this context, i.e., statutes which impose more severe penalties for second and subsequent criminal offenses,

12

'conviction' means the ascertainment of guilt, whether by plea or verdict. [Citations.]" (*Id.* at pp. 60-61.) The court continued: "The express language of the statute further persuades us that the Legislature intended the term 'conviction' to mean the ascertainment of guilt rather than the imposition of sentence pursuant to pronouncement of judgment. . . . [S]ection 11370.2, subdivision (c) provides, in relevant part, that the three-year consecutive term 'shall' be imposed '. . . for each prior felony conviction . . . *whether or not the prior conviction resulted in a term of imprisonment.*' (Italics added.) The sentence imposed pursuant to pronouncement of judgment is clearly not the operative event in determining whether [the] defendant has suffered a prior conviction for purposes of the statute." (*Id.* at pp. 61-62; see also *People v. Rosbury* (1997) 15 Cal.4th 206, 210 ["under the three strikes law 'when guilt is established, either by plea or by verdict, the defendant stands convicted and thereafter has a prior conviction' "]; *People v. Castello* (1998) 65 Cal.App.4th 1242, 1253-1254 [plea of guilty to strike offense amounted to "conviction" of that offense despite fact the defendant "was not formally adjudicated guilty"]; *People v. Davis* (2010) 185 Cal.App.4th 998, 1001 [" 'primary' and 'ordinary' meaning of the term" is that "a person stands 'convicted' upon the return of a guilty verdict by the jury or by the entry of a plea admitting guilt"].)

Here, defendant was found guilty of the prior felony controlled substances offense. He does not dispute this. Had the order granting his petition for habeas corpus granted defendant a new trial, thereby "set[ting] the case at large as though it had never been tried" (*In re Crow* (1971) 4 Cal.3d 613, 620), defendant would have a better argument. But the grant of the habeas corpus petition merely ordered a new sentencing hearing. While this rendered the imposition of sentence a nullity (see *In re Juarez* (1975) 53 Cal.App.3d 64, 69), it did not erase the underlying "conviction" in the sense that word is used in section 11370.2, subdivision (c).

13

The enhancement imposed pursuant to Penal Code section 667.5, subdivision (b), is another matter. This provision "provides for the enhancement of sentences for prior felony convictions for which prison terms were served." (*People v. Espinoza* (1979) 99 Cal.App.3d 59, 68.) The relevant statutory language states: "[W]here the new offense is any felony for which a prison sentence . . . is imposed or is not suspended, in addition and consecutive to any other sentence therefor, the court shall impose a one-year term for each prior separate prison term . . . ." (Pen. Code, § 667.5, subd. (b).) Subdivision (g) of this section provides: "A prior separate prison term for the purposes of this section shall mean a continuous completed period of prison incarceration *imposed* for the particular offense alone or in combination with concurrent or consecutive sentences for other crimes, including any reimprisonment on revocation of parole which is not accompanied by a new commitment to prison, and including any reimprisonment after an escape from incarceration." (Pen. Code, § 667.5, subd. (g), italics added.)

Here, defendant served a period of incarceration for the prior felony controlled substances offense, but the imposition of that prison term was nullified by the grant of defendant's habeas petition. There is no substantial evidence in the record supporting the Attorney General's position that defendant was resentenced. As previously stated, the minute order states the trial court deemed the previously-imposed (now-nullified) sentence had been served and ordered defendant to contact his parole officer. Based on the specific wording of Penal Code section 667.5, subdivisions (b) and (g), we cannot conclude defendant served a "prior separate prison term" for the prior controlled substances conviction, i.e., "a continuous completed period of prison incarceration *imposed* for the particular offense," because there is no valid imposition of sentence with respect to that prior conviction. (Italics added.) We therefore modify the judgment to

14

strike the enhancement imposed under Penal Code section 667.5, subdivision (b), based on defendant's 1988 conviction and affirm the modified judgment.

## DISPOSITION

The judgment is modified to strike the enhancement imposed under Penal Code section 667.5, subdivision (b), based on defendant's 1988 conviction.  As modified, the judgment is affirmed.  The trial court is directed to amend the abstract of judgment to reflect this modification and to forward a certified copy of the amended abstract to the Department of Corrections and Rehabilitation.

       HOCH     , J.

We concur:

     MAURO     , Acting P. J.

     MURRAY   , J.